[No. 64432-7-I.   Division One.   February 28, 2011.]

CHRISTOPHER J.B. GRAY ET AL., *Appellants*, v. BOURGETTE CONSTRUCTION, LLC, *Respondent*.

*Dean R. Sargent, Tarl R. Oliason,* and *Dainen N. Penta* (of *McKisson Sargent & Oliason PS*), for appellants.

*Bridget B. Shaw* (of *Shaw Law Group PLLC*), for respondent.

¶1 LAU, J. — Prior to filing a construction lien, a lien claimant is required by RCW 60.04.031 to provide written notice of right to claim a lien to the property owner. But an exception applies to a lien claimant who contracts directly with the "owner or the owner's common law agent." RCW 60.04.031(2)(a). RCW 60.04.081's summary hearing procedure authorizes an owner who believes the lien is "frivolous and made without reasonable cause" to seek a court order releasing the lien. Homeowners Julie Lassonde-Gray and Christopher Gray (the Grays), allege that Bourgette Construction LLC's lien claim was frivolous based on Bourgette's failure to provide them notice of right to claim the lien. Bourgette contends no notice is required based on the "common law agent" notice exception since he contracted directly with the Grays' common law agent to perform the remodeling work on the Grays' home. Because this lien dispute presents debatable issues of law and fact, it does not satisfy the requirements of frivolous and without reasonable cause justifying its release in the summary procedure. We affirm the trial court's order denying the Grays' lien release motion and awarding fees to Bourgette.

## FACTS

¶2  In the spring of 2008, the Grays hired Geoffrey James dba Wescott Development LLC (James) to develop and manage the major remodel of their Mercer Island home (the project). Neither James nor Wescott Development is a Washington licensed contractor. James contracted with Bourgette to furnish labor, services, materials, and equipment for the project.[1] Bourgette furnished services and materials for the project from April 1, 2008, until March 15, 2009.[2]

¶3  On April 14 and 15, Bourgette obtained two permits from the city of Mercer Island for extensive rot repair and sheetrock replacement on the project. Five other subcontractors also obtained permits from the city to perform work on the project such as plumbing and electrical. When work began inside the house in May 2008, the Grays moved out.

¶4  In total, Bourgette invoiced James $294,631.35 for its work on the project. James, however, paid Bourgette only $178,146.86. This deficiency left Bourgette unable to pay subcontractors that it hired for the project. The following subcontractors claim moneys owed for their work:

| | |
|---|---|
| State Roofing | $14,006.50[3] |
| Todd Gardiner Landscaping Services | $4,126.66 |
| Joel Wood Hardwood Flooring | $5,750.00 |
| B&J Plumbing | $11,072.45 |
| Land Surveyors | $1,750.00 |

¶5  According to James and Bourgette, the Grays knew that Bourgette and other contractors were working on the project. On June 2, 2009, Bourgette filed and recorded a lien for $114,263 and notified the Grays of the lien by certified mail. The claim of lien identified the lien claimant as

---

[1] The contract is not in the record.

[2] The Grays concede this point for appeal purposes only. Br. of Appellant at 3.

[3] State Roofing, the roofer on the project, sued Bourgette for $14,006.50 in King County Superior Court, No. 09-2-16617-0.

"Bourgette Construction, LLC" and the "person indebted to the claimant" as "Geoffrey W. James dba Wescott Development." Bourgette did not provide the Grays a notice of right to claim a lien.

¶6 The Grays claimed the lien was frivolous because Bourgette never gave them notice of right to claim a lien as required by RCW 60.04.031(1). The Grays demanded that Bourgette release the lien. Bourgette refused, asserting that under RCW 60.04.031(3)(a)'s common law agent exception, no notice was required because he contracted directly with the Grays' common law agent—Geoffrey James dba Wescott Development.

¶7 The Grays then filed a motion and supporting declarations to show cause why the lien should not be released as frivolous and without reasonable cause under RCW 60.04.081. The Grays argued (1) James contracted with Bourgette without their knowledge or consent, (2) James had no authority to act as their "attorney in fact or as a general agent for any purpose," (3) Bourgette failed to provide the written notice of its right to claim a lien, and (4) James is neither a "common law agent" nor "construction agent." Br. of Appellant, at 2, 8.

¶8 Bourgette and James submitted response declarations. Bourgette's declaration explained that he contracted with James to perform work on the project in the spring of 2008.[4] He performed work on the project from April 1, 2008 until March 15, 2009. He further explained,

> At all times, based on my dealings and communications with James and directly with the Grays, it was my belief and understanding that James had actual authority to act as the Grays' agent in managing the project . . . .
>
> . . . .
>
> . . . [T]he Grays were aware of Bourgette Construction's extensive work at the project. Throughout the project I met with the Grays numerous times. We discussed the status of the project and specifics about the project.

---

[4] Bradley Bourgette is a member and manager of Bourgette Construction LLC.

¶9 Attached to Bourgette's declaration is e-mail correspondence between James and Christopher Gray "confirming the Grays' knowledge of Bourgette Construction's work at the Property" and the invoices and permits related to the project. Bourgette's declaration also described the payments he received from James, the balance owed, and the subcontractors he hired for the project that remained unpaid.

¶10 James' declaration stated (1) he contracted with the Grays to develop and manage the major remodel of the Grays' home;[5] (2) he had actual authority as the Grays' agent to manage the project and contract directly with contractors to complete the project; (3) with the Grays' knowledge and authorization, he contracted with Bourgette to perform extensive work on the project; and (4) neither he nor his company, Wescott Development, was a licensed contractor.

¶11 At a show cause hearing, the court entered a written order denying the Grays' motion and awarding fees to Bourgette. The court reasoned,

> The case of [S.D.] Deacon [Corp. of Wash.] v. Gaston Brothers [Excavating, 150 Wn. App. 87, 89, 206 P.3d 689 (2009)] does caution trial courts that RCW 60.04.081 is only to be invoked when the lien is so devoid of merit that the lien has no possibility of succeeding. . . .
>
> . . . And it's pretty easy for me to determine once I got through these materials that it's inappropriate to apply [RCW] 60.04.081 with respect to your argument that they failed to give a notice of claim of right to a lien in a case in which there was this middleman agent and in a case which there was so much contact between the contractor and the – and the project or the landowner.

Report of Proceedings (Oct. 13, 2009) at 25-26.

¶12 The Grays appeal.[6]

---

[5] This contract is not in the record.

[6] Pursuant to RCW 60.04.161, the Grays posted a bond and have since sold the home.

## DISCUSSION

¶13 The Grays argue that Bourgette was not hired by a property owner, a licensed contractor, or a common law agent. Therefore, he was required to provide the Grays with a written notice of right to claim a lien as a statutory prerequisite to recording the lien. RCW 60.04.011(1), .031(3). The Grays further argue that because the failure to give such notice makes the lien "frivolous and made without reasonable cause" within the meaning of RCW 60.04.081(1), the trial court erred by not releasing the lien. In essence, the Grays assert Bourgette failed to show that he complied with statutory notice requirements or that an exception to the notice requirement applied.[7]

¶14 Bourgette responds that the frivolous lien proceeding is limited in scope. He argues that the factual dispute over whether James was the Grays' common law agent—an exception to the notice requirement under RCW 60.04.031(3)(a)—precluded the lien's disposition in the summary proceeding.

¶15 Because the trial court did not resolve factual disputes, our review is de novo. *W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc.*, 85 Wn. App. 744, 750, 934 P.2d 722 (1997). A court may make factual determinations in the summary proceeding. *W.R.P.*, 85 Wn. App. at 750. But as we cautioned recently, "[t]rial courts should take care not to let the frivolous lien statute be misused to deprive contractors of their right to a trial on a lien claim." *S.D. Deacon*, 150 Wn. App. at 89. Even if a lien is ultimately found to be

---

[7] On appeal, "[t]he Grays do not dispute that Bourgette provided labor and services in some amount, that Bourgette was the appropriate party to the action, or that Bourgette's lien complied with the statutory form and was served on the Grays. However, Bourgette failed to allege or demonstrate that it complied with the statutory notice requirements or that it was exempt." Reply Br. of Appellant at 3.

invalid, it is frivolous "only if it presents no debatable issues and is so devoid of merit that it has no possibility of succeeding." *Intermountain Elec., Inc. v. G-A-T Bros. Constr.*, 115 Wn. App. 384, 394, 62 P.3d 548 (2003). Every frivolous lien is invalid, but not every invalid lien is frivolous. *Intermountain*, 115 Wn. App. at 394. A lien *might* be clearly meritless when it is not recorded by a proper party, not properly served, or not in compliance with the statutory content requirements. *S.D. Deacon*, 150 Wn. App. at 95.

¶16 The party seeking release of the lien in the summary proceeding bears the burden of proving that the lien was frivolous and made without reasonable cause. *W.R.P.*, 85 Wn. App. at 751. The statute does not define "frivolous and made without reasonable cause." RCW 60.04.011. To be frivolous, a lien must be improperly filed beyond legitimate dispute. *W.R.P.*, 85 Wn. App. at 752. As the party seeking release of the lien in this summary proceeding, the Grays bear the initial burden to provide a reason why the lien is frivolous and without reasonable cause. *W.R.P.*, 85 Wn. App. at 751. Once the Grays provide a reason, the burden then shifts to Bourgette to make a prima facie showing that the lien is not frivolous. *W.R.P.*, 85 Wn. App. at 752. Once Bourgette makes that prima facie showing, the burden shifts back to the Grays to prove the lien was frivolous. The ultimate burden to prove that the lien is frivolous at a show cause hearing to release the lien remains with the Grays—the party challenging the lien. *W.R.P.*, 85 Wn. App. at 752.

¶17 Here, the parties' dispute centers on whether James was the Grays' "common law agent." "Notices of a right to claim a lien shall not be required of: (a) Persons who contract directly with the owner or the *owner's common law agent*." RCW 60.04.031(2)(a) (emphasis added). The Grays asserted that the lien was frivolous because Bourgette did not comply with the statutory notice requirement under RCW 60.04.031(1), and they submitted declarations claiming James lacked any authority to act as their agent.

Bourgette then submitted opposing declarations supporting his argument that no notice was required because he contracted directly with the Grays' common law agent—Geoffrey James dba Wescott Development.

¶18 Bourgette's declaration explained that he contracted directly with James to perform extensive remodeling work on the Grays' property. From April 2008 until March 2009, he furnished labor, professional services, materials, and equipment for the project. He also explained that he met with the Grays numerous times to discuss and update them about the project. And based on dealings and communications with both James and the Grays, he understood that James had actual authority (as the Grays agent) to manage their project. Bourgette attached to the declaration (1) billing invoices dated April 6, 2008 to March 17, 2009, (2) bank statements showing monies paid by James for Bourgette's project work, (3) permits obtained for the project, and (4) e-mail correspondence between James and Christopher Gray showing Gray's knowledge of Bourgette's work on the project. Bourgette also testified that he provided significant labor and services for the project for which he has received only partial payment.

¶19 Like Bourgette's declaration, James's declaration explained that he contracted with the Grays to develop and manage their project. He also described his actual authority as the Grays' agent to contract with and pay others to accomplish the project. He described contracting with the project architect who designed the remodel, the window company that replaced the windows, and Bourgette.

¶20 Because Bourgette made a prima facie showing that the lien is not frivolous—the common law agent[8] exception

---

[8] While the statute provides no definition for "common law agent," the plain meaning is "the body of [agency] law derived from judicial decisions, rather than from statutes or constitutions." BLACK'S LAW DICTIONARY 293 (8th ed. 2004). "[A]n agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control." *Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969). Both the principal and agent must consent to the relationship. *Hewson Constr., Inc. v.*

applies—the burden shifts back to the Grays to prove the lien is frivolous.[9] The Grays fail to demonstrate the lien is frivolous. "[A] determination that any given statutory requirement has not been satisfied [does not] necessarily mean[ ] that the lien filing was frivolous." *W.R.P.*, 85 Wn. App. at 752. "A case is not necessarily frivolous because a party ultimately loses on a factual or legal ground. Likewise, for a lien to be frivolous, the decision that the lien was improperly filed must be clear and beyond legitimate dispute." *W.R.P.*, 85 Wn. App. at 752. Under the circumstances here, the parties' dispute over whether James is the Grays' common law agent is not the type of dispute that can be resolved in a summary proceeding. The record shows each side had evidence supporting its position. And "the more complex the underlying contractual relationship, the less appropriate will it be to conclude that a particular lien filing is frivolous." *S.D. Deacon*, 150 Wn. App. at 95. Because this lien dispute presents debatable issues of law and fact, it does not satisfy the requirements of "frivolous and without reasonable cause" justifying its release in this summary proceeding.[10]

*Attorney Fees*

¶21 The Grays also assign error to the trial court's decision to award fees to Bourgette in the summary procedure. RCW 60.04.081(4) provides in relevant part, "If the court determines that the lien is not frivolous and was made with reasonable cause, and is not clearly excessive,

---

*Reintree Corp.*, 101 Wn.2d 819, 823, 685 P.2d 1062 (1984). The crucial factor is the right to control the manner of performance that must exist to prove agency. *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.*, 28 Wn. App. 669, 674, 626 P.2d 30 (1981).

[9] Bourgette was sanctioned because he responded to the Grays' motion on the day of the show cause hearing, giving the Grays no time to reply. But the Grays did not ask for a continuance to provide more proof at the hearing on their motion, nor have they argued that they were denied the opportunity to prove their case or assigned error on this issue.

[10] We do not address the circumstances under which a trial court may properly release a lien in a summary proceeding for failure to give notice of right to claim a lien.

the court shall issue an order so stating and awarding costs and reasonable attorneys' fees to the lien claimant to be paid by the applicant." Because the trial court did not err in denying the motion to release the lien, it properly awarded fees to Bourgette.

¶22 Bourgette requests attorney fees on appeal. "[I]n general, where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal." *Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn. App. 383, 423, 161 P.3d 406 (2007). The request is granted subject to compliance with RAP 18.1(d).

## *CONCLUSION*

¶23 At the show cause hearing, the Grays had the ultimate burden of proof to show that the lien was frivolous and made without reasonable cause. On this record, the Grays did not show beyond legitimate dispute that they were entitled to notice of right to claim a lien and that James was not their common law agent. Accordingly, we affirm the trial court's order denying the motion to release lien and the fee award to Bourgette.

BECKER and SCHINDLER, JJ., concur.