

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JEFFREY RIORDAN, an individual, | ) | No. 40995-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MATTHEW T. VOGT and APRIL D. | ) | |
| VOGT, husband and wife, | ) | |
| | ) | |
| Appellants. | ) | |

HILL, J. — April Vogt, the owner of 1 Fine Lady, LLC (1 Fine Lady), personally filed a lien against Jeffrey Riordan's property after Riordan allegedly failed to pay her for work she performed. The trial court entered an order releasing the lien as frivolous because it found 1 Fine Lady was the proper claimant, not Ms. Vogt. Ms. Vogt's motion for reconsideration was denied, and she appeals. We affirm the trial court's decision on an alternative basis as neither Ms. Vogt nor 1 Fine Lady performed "professional services" to support a lien under RCW 60.04.021.

BACKGROUND

Jeffrey Riordan was the owner of a property in Spokane County, Washington. Riordan wanted to make improvements to the property to increase its value prior to

selling it.  In May 2024, Riordan agreed with his longtime friend, Matthew Vogt, to have

Mr. Vogt repair a deck on the property.  Mr. Vogt's wife, April Vogt, was an interior

designer, who sometimes conducted business under the name 1 Fine Lady.  Riordan

agreed with Ms. Vogt, either in her individual capacity or as the owner of 1 Fine Lady, to

prepare the property for display and sale.

The Vogts claimed they completed their work, but alleged Riordan did not pay in

full.  In July 2024, the Vogts filed a "Claim of Lien" against Riordan's property.  Clerk's

Papers (CP) at 95.  In November 2024, Riordan sold the property and purchased a

"Release of Lien Bond."  CP at 109 (some capitalization omitted).  Shortly thereafter,

Riordan filed a "Verified Complaint for Frivolous Lien and  Constructive Fraud" and a

"Motion for Order to Show Cause," arguing that the Vogts' lien was frivolous pursuant to

RCW 60.04.081.  CP at 3-8, 12-15.  In his complaint and motion to show cause, Riordan

argued the Vogts should be prohibited from enforcing their lien because (1) they were not

registered contractors pursuant to RCW 18.27.040, and (2) they failed to provide a

disclosure statement under RCW 18.27.114.

In their written response, the Vogts conceded that Mr. Vogt did not have the right

to enforce the lien because he was not a registered contractor and failed to provide notice

under RCW 18.27.114.  However, Ms. Vogt claimed the lien was only for her services

and the cost of the supplies she purchased at Riordan's request.  She stated she only

2

added Mr. Vogt to the lien "because they are married and Washington is a community property state." CP at 114. Ms. Vogt argued that she was not required to provide Riordan with the disclosure statement because she did not perform any construction work and, therefore, she did not meet the definition of a construction "contractor" under RCW 18.27.010(1)(a). Instead, she claimed she "performed design services" by "cleaning and organizing the property . . . removing junk, packing items and storing items off site and staging to make the house look nice to potential buyers," and purchasing materials. CP at 54.

In support of this claim, Ms. Vogt presented a contract, presumably signed by both parties, that outlined her services and the financial agreement. According to Ms. Vogt, the parties signed the contract on May 18, 2024. The contract identified the parties as "Jeff Riordan" and "April Vogt, dba 1 Fine Lady LLC." CP at 57. The contract required Ms. Vogt to perform various tasks in exchange for Riordan paying the greater amount of "1.2 % of the final sale price of the Property or $12,000." CP at 58. Ms. Vogt also presented 17 "Transaction Details" statements from Lowe's showing supply purchases. CP at 64-93. These supplies purportedly included "lumber, screws, saw blades, cable ties, conduits, conduit fittings, nails, gloves, a work light, a pry bar, drill bit, pressure washer, hose, tape measure, plastic bucket, paint, paint primer, wood filler, brushes and tools." CP at 54. These statements listed "1FINELADY Riordan" in the job name of

each order and were paid for by Mr. Vogt's debit or Visa card.  CP at 64-93.

In his written reply, Riordan denied he had ever seen the contract and alleged his signature was forged.  However, he argued that if he had entered into the contract, then it designated 1 Fine Lady, not Ms. Vogt, as the contracting party. Therefore, 1 Fine Lady was a potential lien claimant.  Riordan also claimed Ms. Vogt (or 1 Fine Lady) did not furnish labor, professional services, materials, or equipment to improve the property under RCW 60.04.021 and was not authorized to file a lien.

After a hearing on December 6, 2024, the court concluded Ms. Vogt was not the proper lien claimant because the contract was between Riordan and 1 Fine Lady.  The court did not address Riordan's other claims.  The court issued an order releasing the lien and granting Riordan his attorney fees and costs, as mandated by RCW 60.04.081.

Ms. Vogt filed a motion for reconsideration.  She argued she did not have the opportunity to brief the issue of whether she was the proper lien claimant because Riordan raised the argument for the first time in his reply brief.  Ms. Vogt provided documentation that showed 1 Fine Lady was administratively dissolved before the parties executed the contract and remained dissolved when she filed the lien.  Ms. Vogt argued the dissolution rendered 1 Fine Lady incapable of entering into the contract.  In the alternative, Ms. Vogt argued that even if 1 Fine Lady was the proper claimant, the lien

No. 40995-3-III
*Riordan v. Vogt*

was not time-barred and could be amended because it was not invalid on its face. The court denied reconsideration without elaboration. Ms. Vogt appeals.

ANALYSIS

*Frivolous Lien Procedure*

Anyone who furnishes "labor, professional services, materials, or equipment for the improvement of real property" is authorized to file a lien against the subject property. RCW 60.04.021. If the property owner believes a lien is frivolous, RCW 60.04.081 provides a summary proceeding in which the property owner may quickly obtain the lien's release. *W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc.*, 85 Wn. App. 744, 749, 934 P.2d 722 (1997). The property owner may file a motion requiring the lien claimant to show cause why the lien is not frivolous and is made with reasonable cause. RCW 60.04.081(1). The motion must "state the grounds upon which relief is asked" and be supported by affidavit "setting forth a concise statement of the facts upon which the motion is based." RCW 60.04.081(1).

At the frivolous lien show cause hearing, the party seeking the lien's release bears the ultimate burden of demonstrating frivolousness. *Gray v. Bourgette Constr., LLC*, 160 Wn. App. 334, 342, 249 P.3d 644 (2011). While the court may make factual determinations, the trial court's resolution of factual disputes is limited to lien claims that are clearly meritless. *S.D. Deacon Corp. of Wash. v. Gaston Bros. Excavating*, 150 Wn.

5

App. 87, 90, 206 P.3d 689 (2009).  Where the court makes factual findings, these findings must be supported by substantial evidence.  *W.R.P. Lake Union Ltd. P'ship*, 85 Wn. App. at 750.  The court "should take care not to let the frivolous lien statute be misused to deprive contractors of their right to a trial on a lien claim."  *S.D. Deacon Corp.*, 150 Wn. App. at 89.  If the court determines that the lien is frivolous and made without reasonable cause, it shall enter an order releasing the lien and award reasonable attorney fees and costs to the property owner.  RCW 60.04.081(4).

We review de novo the lower court's legal conclusion that a lien is frivolous. *Woodley v. Style Corp.*, 7 Wn. App. 2d 543, 551, 453 P.3d 739 (2019).  The standard for finding a lien frivolous is high.  *Id.* at 552   Even when a "lien may ultimately be invalid and unenforceable, the narrow hearing authorized by RCW 60.04.081 does not allow for release of a lien based on invalidity alone."  *Id.* at 564-65;  *see also Intermountain Elec., Inc. v. G-A-T Bros. Constr.,* 115 Wn. App. 384, 394, 62 P.3d 548 (2003).  The "lien must be improperly filed beyond legitimate dispute."  *Pac. Indus., Inc. v. Singh*, 120 Wn. App. 1, 5, 86 P.3d 778 (2003).  A lien is only frivolous if it "'presents no debatable issues and is so devoid of merit that it has no possibility of succeeding.'"  *Williams v. Athletic Field, Inc.*, 172 Wn.2d 683, 699, 261 P.3d 109 (2011) (quoting *Intermountain Elec.*, 115 Wn. App. at 394).

6

*Trial Court's Ruling*

In its written ruling, the court focused almost exclusively on the issue Riordan raised in his reply brief, namely, whether Ms. Vogt or 1 Fine Lady was the proper lien claimant. The court examined the evidence presented by the parties and relied on several arguments suggesting Riordan contracted with 1 Fine Lady and not Ms. Vogt. Specifically, the court referenced the contract, which was on 1 Fine Lady letterhead and listed the principal office as 1 Fine Lady's location at 1901 8th Ave. W., Seattle, WA 98119-2817. The contract indicated it was between Riordan and "April Vogt, dba 1 Fine Lady, LLC organized and existing under the laws of the state of Washington." CP at 57. The court also considered the Lowe's invoices, which referenced a job title of "1FINELADY Riordan," and the accounting document, which was on 1 Fine Lady letterhead. Conversely, the court noted that the Vogts filed the lien personally and listed their return address as a location in Monroe, Washington. Since an LLC was a separate legal entity from its members, the court concluded 1 Fine Lady was the only potential lien claimant, not Ms. Vogt. *See* RCW 25.15.071. On this basis, the court concluded the lien was frivolous.

*Professional Services*

We agree with the trial court that there are compelling reasons to find Riordan contracted with 1 Fine Lady, not Ms. Vogt. Ms. Vogt has also presented this court with

7

reasons to conclude this is a debatable issue. However, even if the issue of who Riordan contracted with is debatable, Ms. Vogt's status as a potential lien claimant is not. We conclude Ms. Vogt did not provide Riordan with "professional services . . . for the improvement of real property." RCW 60.04.021.

Under RCW 60.04.021, a person can file a lien only if they "furnish[ed] labor, professional services, materials, or equipment for the improvement of real property." "Professional services" are defined as "surveying, establishing or marking the boundaries of, preparing maps, plans, or specifications for, or inspecting, testing, or otherwise performing any other architectural or engineering services for the improvement of real property." RCW 60.04.011(13). Ms. Vogt claimed her services included "cleaning and organizing the property . . . removing junk, packing items and storing items off site and staging to make the house look nice to potential buyers. I assisted with picking out potential paint colors." We find nothing in this record to suggest Ms. Vogt provided "professional services" as defined under the lien statute. RCW 60.04.021.

Further, RCW 60.04.011(5) defines "improvement" of real property as "(a) [c]onstructing, altering, repairing, remodeling, demolishing, clearing, grading, or filling in, of, to, or upon any real property . . . ; (b) [permanent landscaping]; and (c) providing professional services upon real property or in preparation for or in conjunction with the intended activities [listed] in (a) or (b)." Ms. Vogt did not perform any services that

8

"improved" real property. RCW 60.04.011(13). At best, she removed, cleaned, and stored personal property and offered advice. As we stated in *Colorado Structures, Inc. v. Blue Mountain Plaza, LLC*, "'[t]he activities described in subsections (a) and (b) strongly suggest that the resulting improvements will be permanently affixed to or part of the realty.'" 159 Wn. App. 654, 663, 246 P.3d 835 (2011) (quoting *Haselwood v. Bremerton Ice Arena, Inc.*, 137 Wn. App. 872, 886, 155 P.3d 952 (2007), *aff'd*, 166 Wn.2d 489, 210 P.3d 308 (2009)). "Minor preparatory activities do not amount to 'improvement' of realty." *Id.* at 663.

Ms. Vogt likewise fails to present a debatable issue that she purchased materials meant for the improvement of real property. It is undisputed that Mr. Vogt performed the work on the deck. The evidence, in the form of the Lowe's receipts, show Mr. Vogt paid for the materials, not Ms. Vogt. Every invoice shows it was paid using Mr. Vogt's bank account. Even if Ms. Vogt purchased the materials using her husband's bank account, it is a bridge too far to conclude that this act somehow grants Ms. Vogt the ability to file a lien when her husband could not.

Simply put, Ms. Vogt's services were not the type contemplated by the lien statute. We agree with the trial court that the lien is frivolous.[1]

---

[1] We need not address whether the lien may be amended as our decision makes this issue irrelevant.

No. 40995-3-III
*Riordan v. Vogt*

*Fees*

Both Ms. Vogt and Riordan request reasonable attorney fees and costs pursuant to RAP 18.1 and RCW 60.04.081. RCW 60.04.081(4) requires the trial court and appellate court to issue an order awarding costs and attorney fees to the prevailing party. *Lennar Multifamily Builders, LLC v. Saxum Stone, LLC*, 18 Wn. App. 2d 435, 452, 492 P.3d 175 (2021). Because we affirm the trial court's finding of frivolousness, we also affirm its attorney fees award. Riordan is also awarded his attorney fees on appeal.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____          _____
Cooney, A.C.J.                                              Murphy, J.

10